**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Ramon Cantu,                                                    Civil No. 05-cv-2629 (RJK/JJG)

    Plaintiff,

v.                                                                              **REPORT**
                                                                                         **AND**

M. Muraski, Dave Porra, B. Cady,                              **RECOMMENDATION**
and Connie Roehrich,

    Defendants.

Plaintiff Ramon Cantu ("Cantu"), a pro se state prisoner, brings this 42 U.S.C. § 1983 action against four state prison officials alleging that they violated his state and federal constitutional rights, as well as various Minnesota employment laws. The matter is before the Court on the Defendants' motion for summary judgment (Doc. No. 51). For the reasons set forth below, the Court recommends that the Defendants' motion be granted.

**I.     BACKGROUND**

Cantu is incarcerated at the Minnesota Correctional Facility in Faribault, Minnesota ("MCF-FRB"). Defendant Connie Roehrich, is MCF-FRB's Warden. Defendants Muraski and Cady are other MCF-FRB prison officers, or former officers. Defendant Porra is a MCF-FRB supervisor at the prison work program where Cantu was employed.

    **A.     MINNCOR Work Program**

Minn. Stat. § 241.27 establishes MINNCOR Industries, a state inmate work program. Pursuant to this provision, the Minnesota Commissioner of Corrections established a MINNCOR program at MCF-FRB by contracting with Anagram International, Inc. Through this arrangement, some MCF-FRB

inmates provide assembly and packaging services to Anagram, in exchange for payment in accordance with MINNCOR rules.

### B.     Alleged Threatening Comment

Cantu worked in the Anagram MINNCOR program at MCF-FRB. His lawsuit arises out of an incident that occurred on July 19, 2005, while he was working at Anagram. On that day, he was seated at a work table with three other inmates. Defendant Porras, an Anagram supervisor, approached the inmates to check on their work. As he turned to leave, he states that he heard one of the four inmates at Cantu's work table say, "Don't worry, we'll get him later." Defendant Porras did not know which inmate made the alleged comment. *Affidavit of Jacie Rabideau Carter*, Ex. 10. Cantu states that he did not make the alleged comment and does not know who, if anyone, did. *Amended Complaint*, p. 4.

Due to the threatening nature of the alleged comment, all four inmates seated at the work table, including Cantu, were originally terminated from the Anagram project. *Amended Complaint*, p. 5; *Carter Aff.*, Ex. 18. Prison policy regarding the Anagram program generally provides for progressive discipline, but states that immediate termination is possible if the severity of a situation warrants it. *Carter Aff.*, Ex. 6.

After investigating the matter, prison officials narrowed the probable source of the alleged threatening comment to two of the four inmates, Cantu and Terry Little. *Id.*, Ex. 11. The other two inmates were, therefore, reinstated to their Anagram assignment. *Cantu's Supplemental Memo. and Exhibits* (Doc. No. 45); *Carter Aff.*, Ex. 23. Cantu and Little were not. *Id.*

Cantu lost his single room assignment due to his termination from the Anagram program. Prison policy provides that inmates in the Anagram program forfeit a single room assignment when they are

terminated. *Carter Aff.*, ¶ 6 and Ex. 7.

Cantu appealed his termination and the loss of his room assignment through MCF-FRB's administrative appeal process for the Anagram program, including, ultimately, to Defendant Warden Roehrich. *Carter Aff.*, Ex. 23. She upheld the decision. *Id.* The appeal process involved several levels of review and included a hearing. *Id.*, Ex. 18.

### C. Cantu's State Court Lawsuit

On August 23, 2005, Cantu filed a lawsuit arising out of the Anagram incident in Rice County District Court. *Id.*, Ex. 25. The Rice County judge dismissed the action with prejudice, finding that it was "frivolous or malicious" with "no arguable basis in law or in fact." *Id.* Cantu filed the instant suit almost three months later, on November 14, 2005.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. *See Celotex*, 477 U.S. at 322; *Mems v. City of St. Paul, Dep't of Fire & Safety Servs.*, 224 F.3d 735, 738 (8th Cir. 2000). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). The Court views the evidence, and the

inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. *See Graves v. Ark. Dep't of Fin. and Admin.*, 229 F.3d 721, 723 (8th Cir. 2000); *Calvit v. Minneapolis Pub. Schs.*, 122 F.3d 1112, 1116 (8th Cir. 1997).

### B.     Effect of State Court Dismissal

The Court first addresses the threshold question of whether the prior dismissal of Cantu's state suit forecloses the instant suit. The impact of the state court dismissal is addressed below under both Rooker-Feldman and state law preclusion principles.

#### 1.     Rooker-Feldman and Subject Matter Jurisdiction

The Rooker-Feldman doctrine "prohibits lower federal courts from exercising appellate review of state court judgments." *Skit Internat'l, Ltd. v. DAC Technologies of Arkansas, Inc.*, 487 F.3d 1154, 1156 (8th Cir. 2007), cert. denied, -- S. Ct. --, 2007 WL 240178 (Oct. 29, 2007).[1]   The doctrine stems from the jurisdictional premise that the United States Supreme Court is the sole federal court charged with appellate review of most state court judgments. *See* 28 U.S.C. § 1257. Thus, Rooker-Feldman is a question of subject matter jurisdiction. Although the Defendants did not argue Rooker-Feldman as part of their motion, the Court raises it on its own, as it must. Fed. R. Civ. P. 12.03 ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), is among the most recent Supreme Court guidance regarding Rooker-Feldman's proper scope. There the Court held that

---

[1] The doctrine derives its name from the two cases establishing it, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

Rooker-Feldman did not divest a federal district court of subject matter jurisdiction where a judgment issued in a parallel state court proceeding while the federal suit was pending. *Id.* at 293. In so doing, the Court expressly described the "limited circumstances" in which Rooker-Feldman applies as those where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state court judgment and seeking review and rejection of that judgment." *Id.* at 291. The Court emphasized that preclusion law, rather than the Rooker-Feldman doctrine, typically governs the impact of a state court judgment on a federal suit. *Id.* at 293.

Last year, in *Lance v. Dennis*, 546 U.S. 459 (2006), the Supreme Court again instructed against an expansive reading of Rooker-Feldman. The Court held that the doctrine does not bar actions by nonparties who could be considered in privity with parties to a prior state court judgment. *Id.* at 466. The Court emphasized, as it did in *Exxon*, that courts should look primarily to state preclusion law to determine the effect of prior state court judgments. *Id.* The Court also reiterated its point in *Exxon* that Rooker-Feldman is a "limited doctrine," not a "uniform *federal* rule governing the preclusive effect of state court judgments contrary to the Full Faith and Credit Act." *Id.* (emphasis in original).

Courts have variously interpreted *Exxon*. Some have limited it to its facts, circumscribing its rule to cases involving parallel state and federal proceedings where the state court judgment has yet to issue or issues after the federal case has begun. These courts continue to employ pre-*Exxon* cases to broadly apply Rooker-Feldman. Other courts have read *Exxon* to narrow the application of Rooker-Feldman to those cases where the federal suit is actually predicated on an injury caused by the state court judgment.

Notably, the Eighth Circuit Court of Appeals' recent exploration of Rooker-Feldman in *Skit Internat'l, Ltd.,* 487 F.3d at 1156-1157, takes its cue from *Exxon*. The court recognized that, after

5

*Exxon*:

> A district court is not deprived of jurisdiction over every case in which a plaintiff seeks a result different from the one it obtained in state court.... Rather, Rooker-Feldman is implicated in that subset of cases where the losing party in a state court action subsequently complains about that judgment and seeks review and rejection of it.

*Id.* at 1157.

Similarly, in *Rean v. Hallis*, Civ. No. 07-2989 (PJS/RLE), 2007 WL 2695592 (D. Minn. Sep. 11, 2007) (Order adopting Report and Recommendation), the court described the subset of cases falling within Rooker-Feldman's constricted scope as, "those instances where the plaintiff seeks redress for an injury caused by the State Court decision itself." *Id.* at *5.

This case falls into the considerable thorny gray area of Rooker-Feldman jurisprudence. Unlike *Exxon*, it does not involve parallel state and federal proceedings. Here, the state court dismissed Cantu's case over two months before he filed his federal case. It also does not involve the paradigm Rooker-Feldman situation where a litigant directly attacks a state court judgment by explicitly asserting that the judgment caused the injury giving rise to the federal complaint. *See Skit Internat'l*, 487 F.3d at 1157. Cantu's federal Complaint, while predicated on the same facts and legal theories as the Rice County suit, does not maintain that the state court dismissal, itself, is the source of his injury.

This Court finds that *Exxon* and *Lance* clearly emphasize Rooker-Feldman's narrow scope and instruct district courts to look primarily to state law preclusion doctrine to determine the effect of state court judgments on federal suits. Because Cantu's federal suit does not constitute the type of attack on a state court judgment encompassed by Rooker-Feldman, this Court finds that doctrine inapplicable and

its exercise of subject matter jurisdiction appropriate.[2]

### 2. **Res Judicata**

Unlike Rooker-Feldman, preclusion doctrines are not jurisdictional, but rather exist to promote finality. *See Exxon*, 544 U.S. at 293 ("Preclusion, of course, is not a jurisdictional matter."); *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004) (res judicata "mandates that there be an end to litigation"). *See also Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 402 (1981) ("res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts") (citation and quotations omitted).

"A prior state court decision receives the same preclusive effect in federal court as it would receive in the state court." *Charchenko v. City of Stillwater*, 47 F.3d 981, 984 (8th Cir. 1995) (citing 28 U.S.C. § 1738)).[3] The Court must, therefore, examine Minnesota law to determine if the prior state court decision dismissing Cantu's suit has preclusive effect.

Under Minnesota law, res judicata bars parties from raising claims in a second action where: "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privities; (3) there was a final judgment on the merits; (4) the estopped party had a full and fair opportunity to litigate the matter." *Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P*, 732

---

[2] As discussed below in the res judicata context, the state court never entered judgment on its order dismissing Cantu's suit. This Court does not address whether the lack of judgment affects the Rooker-Feldman analysis, as it concludes that the doctrine is inapplicable here in any event.

[3] 28 U.S.C. § 1738, the Full Faith and Credit Statute, provides, "Such [state] judicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken."

N.W.2d. 209, 220 (Minn. 2007) (quoting *State v. Joseph*, 636 N.W.2d. 322, 327 (Minn. 2001)). Once a dispute between parties has been adjudicated, res judicata prevents either party from re-litigating claims arising from the original circumstances, even under new legal theories. *Wilson v. Comm'r of Revenue*, 619 N.W.2d 194, 198 (Minn. 2000).

Cantu's federal suit is factually identical to his Rice County case. Moreover, it is clear that the state court judge dismissed the case on its merits, concluding that it "has no arguable basis in law or in fact." Finality of the state court order, however, is lacking. The state court never entered judgment on the dismissal order. Minnesota law generally requires the entry of judgment on a dismissal order and the expiration of the appeal period to render it final for purposes of appeal. *See* Minn. R. Civ. App. P. 103.03; *Joseph*, 636 N.W.2d at 328. Nor does the order appear to be appealable on its own, without a judgment. Minn. R. Civ. App. P. 103.03. Since judgment was not entered, a final judgment on the merits does not exist here, and the application of res judicata is inappropriate.[4]

### C. Federal Constitutional Claims

Neither Cantu's Amended Complaint nor his original Complaint explicitly pled a denial of his federal constitutional or statutory rights as 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343, require. Rather, he alleged denial of his due process and other rights under the Minnesota Constitution. Cantu, however, alleged federal constitutional violations of his due process and equal protection rights in a submission entitled " Plaintiffs' Brief" (Doc. No. 7) filed shortly after his original Complaint. While Cantu did not specifically identify the federal constitutional deprivations in a complaint,

---

[4]The Court does not examine whether the same parties, or those in privity with them, are present in both suits, due to its conclusion that a final judgment is lacking.

construed liberally, he pled the facts underlying them. He is pro se. Accordingly, the Court liberally construes his Amended Complaint to encompass the federal due process and equal protection claims. *See* Fed. R. Civ. P. 8(f); *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir.1996) (per curiam) (pro se complaints should be liberally construed).

### 1. Eleventh Amendment Immunity

Cantu sued the Defendants in both their official and individual capacities, and requests damages and injunctive relief. His damages claim against Defendants in their official capacities is barred by the Eleventh Amendment. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is ... no different from a suit against the State itself"); *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment"). The Court, therefore, recommends dismissal of Cantu's damages claim against Defendants in their official capacities for lack of subject matter jurisdiction. Cantu's claims against the Defendants in their individual capacities and for injunctive relief are not barred by the Eleventh Amendment and are, therefore, considered below. *See e.g., Hopkins v. Saunders,* 199 F.3d 968, 977 (8th Cir.1999), *cert. denied*, 531 U.S. 873 (2000) (official capacity actions for prospective relief are not treated as actions against the State).

### 2. Due Process

Cantu claims that he was denied due process of law because he was not afforded a proper hearing with the right to call witnesses in connection with the loss of his work assignment and single room. To trigger due process protections, Cantu must identify a constitutionally recognized liberty or property interest. *Ragan v. Lynch*, 113 F.3d 875, 876 (8th Cir. 1997). He has not done so.

A prisoner's due process rights are implicated only when he can show that he has suffered an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Such hardship means "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." *Moorman v. Thalacker*, 83 F.3d 970, 972 (8th Cir. 1996).

The expectation of keeping a prison job is not a property or liberty interest afforded due process protection. *Flittie v. Solem*, 827 F.2d 276, 279 (8th Cir. 1987); *Lyon v. Farrier*, 727 F.2d 766, 769 (8th Cir.), *cert. denied*, 469 U.S. 839 (1984); *Kelley v. Vaughn*, 760 F. Supp. 161, 163 (W.D. Mo. 1991). Neither is a single room assignment. *Lyon*, 727 F.2d at 768 ("It is well established that prisoners have only narrowly defined liberty interests, for imprisonment necessarily retracts many of the liberties of the free.... Among the liberties which prisoners do not enjoy is choice of cells") (citations omitted). *See also Olim v. Wakinekona*, 461 U.S. 238 (1983) (prisoner has no legitimate claim of entitlement to be housed in any particular facility). Cantu, therefore, raises no constitutionally protected interest entitling him to due process protection.

### 3. Equal Protection

Cantu also claims that he was denied equal protection under the Fourteenth Amendment because his job was not reinstated, while two other inmates involved in the same incident as Cantu were eventually reinstated to their jobs.[5]

Cantu does not contend that he is a member of a protected class or identify a fundamental right he claims has been violated. He must, therefore, show that "similarly situated classes of inmates are

---

[5]The fourth inmate involved in the threatening comment incident did not appeal his termination.

treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest.... He must also show intentional or purposeful discrimination." *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003) (citations omitted). *See also Gilmore v. County of Douglas, State of Nebraska*, 406 F.3d 935, 937 (8th Cir. 2005) ("When an equal protection claim is neither based on a 'suspect class' or grounded in a fundamental right, it is subject to rational basis review.").

Even viewing the facts in a light most favorable to Cantu, no genuine issue of material fact exists on his equal protection claim. While two of the four inmates involved in the original threatening comment incident were eventually reinstated to their jobs, prison officials investigated and determined that the reinstated inmates likely did not make the comment. *E.g.,* Cantu's *Supplemental Memorandum and Exhibits*, Doc. No. 56 at D-30. Thus, Cantu and the two reinstated inmates were not similarly situated for Fourteenth Amendment purposes. *See e.g., Gaitlin ex rel Estate of Gaitlin v. Green*, 362 F.3d 1089, 1094 (8th Cir. 2004) ("state actors may treat dissimilarly situated people dissimilarly without running afoul of" the Equal Protection clause) (citation omitted). Moreover, his concern that he was treated differently from two other inmates does not entail the differing treatment of classes of inmates contemplated by the Equal Protection Clause. *See Weiler v. Purkett*, 137 F.3d 1047, 1051-1052 (8th Cir. 1998) ("a few individual examples of unequal treatment" do not create inference of classwide discrimination).[6]

### D.   State Law Claims

Cantu also raises due process and other claims under the Minnesota Constitution and claims under the Minnesota Whistleblower Act, Minn. Stat. § 181.932, and Minn. Stat. § 181.64, prohibiting fraud

---

[6]The Court does not reach the issue of whether the Defendants are entitled to qualified immunity from suit in their individual capacities as it finds that Cantu does not survive summary judgment on the merits of his Constitutional claims.

in employment offers. The Eleventh Amendment bars these claims. This Court cannot exercise supplemental jurisdiction over state law claims against state officials. *O'Connor v. Jones*, 946 F.2d 1395, 1397-1398 (8th Cir. 1991) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984)); *Treleven v. Univ. of Minnesota*, 73 F.3d 816, 819 n.4 (8th Cir. 1996). Cantu's state law claims must, therefore, be dismissed.

### III. CONCLUSION

Although Cantu previously filed a virtually identical suit in state court, which was dismissed on its merits, that dismissal does not have preclusive effect here. Cantu's damage claims against the Defendants in their official capacities and his state law claims are barred by the Eleventh Amendment. His claims against the Defendants in their individual capacities and for injunctive relief fail on their merits. The Court, therefore, recommends that the Defendants' motion for summary judgment be granted.

### IV. RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

A.  Defendants' Motion for Summary Judgment (Doc. No. 51) be GRANTED.

B.  This case be DISMISSED WITH PREJUDICE.

Dated this 18th day of December 2007.

                                              s/ Jeanne J. Graham
                                              JEANNE J. GRAHAM
                                              United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **January 3, 2008**. A party may respond to the objections within ten days after service. Any objections or responses filed under this rule shall not exceed 3,500 words. The District Court shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit. Unless the parties stipulate that the District Court is not required, under 28 U.S.C. § 636, to review a transcript of the hearing in order to resolve all objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.